UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DENNIS ALLEN CANNON, | ) | 1:04-CV-6327 AWI SMS HC |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| A. K. SCRIBNER, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on August 30, 2001, of one count of larceny (Cal. Penal Code § 460(b)), and four counts of forgery (Cal. Penal Code § 470(d)). See Exhibit 1, Respondent's Answer to Petition for Writ of Habeas Corpus (hereinafter "Answer"). Additionally, the court found true the allegations that Petitioner had suffered seven prior strike convictions within the meaning of Cal. Penal Code

---

[1] This information is derived from the Petition for Writ of Habeas Corpus, Respondent's Answer to the Petition, and the exhibits attached to Respondent's Answer.

1  §§ 667(c)-(j), 1170.12(a)-(e). Id. On October 17, 2001, Petitioner was sentenced to an indeterminate
2  term of 25 years to life. Id.

3  Thereafter, Petitioner filed a notice of appeal with the California Court of Appeal, Fifth
4  Appellate District (hereinafter "5th DCA"). On April 16, 2003, the 5th DCA issued an unpublished
5  opinion affirming the judgment. See Exhibit 3, Answer.

6  On May 23, 2003, Petitioner filed a petition for review in the California Supreme Court. See
7  Exhibit 4, Answer. The petition was summarily denied on June 25, 2003. See Exhibit 4, Answer.

8  On or about November 3, 2003, Petitioner filed a petition for writ of habeas corpus in the
9  Kern County Superior Court; the petition was denied on June 25, 2003. See Exhibit 5, Answer.

10  On or about December 16, 2003, Petitioner filed a second petition for writ of habeas corpus
11  in the Kern County Superior Court; that petition was denied on January 26, 2004. See Exhibit 6,
12  Answer.

13  On September 29, 2004, Petitioner filed the instant federal habeas petition in this Court. The
14  petition raises the following four claims: 1) Petitioner contends he has twice been placed into
15  jeopardy for crimes which happened around the same time in violation of the Double Jeopardy
16  Clause of the United States Constitution; 2) Petitioner alleges his convictions violate state law as set
17  forth in Kellett v. Superior Court, 63 Cal.2d 822 (1966); 3) Petitioner claims the admission of
18  evidence of Petitioner's prior misdemeanor conviction violated his due process rights; and 4)
19  Petitioner contends his due process rights were violated when the State prosecuted Petitioner for the
20  underlying crimes after the State had promised Petitioner he would not be charged for additional
21  crimes if he pleaded guilty to misdemeanor forgery. See Memorandum in Support of Petition at 2.

22  On January 6, 2005, Respondent filed an answer to the petition. Respondent concedes
23  Petitioner has exhausted his state remedies.

24  On March 25, 2005, Petitioner filed a traverse.

**FACTUAL BACKGROUND**

26  The Court hereby adopts the facts as summarized by the 5th DCA in its opinion dated
27  April 16, 2003:

28  Appellant was charged with passing a number of forged checks in the name of

Mildred D. Ritter. Ritter passed away on February 26, 2000, and the forged checks at issue were passed in July 2000. The prosecution introduced evidence indicating that Ritter did not sign the checks in question.

Floyd Harl worked as the manager of Foodland Market in 2000. He testified that he cashed a check for appellant, which was signed with the name Mildred D. Ritter and bore the date July 13, 2000. Harl initially declined to cash the check for appellant because he did not know him, but changed his mind when appellant told him his mother was Opal, a customer known to Harl. Appellant signed the name "David Costello" on the back of the check, and Harl authorized the transaction. Harl subsequently identified appellant from a photographic lineup as the man who passed the check. He noted that appellant looked different in court than he did in the photograph.

John Payne worked at a fireworks stand on July 1, 2000. Payne identified a check he received on that day for fireworks. The check was signed with the name Mildred D. Ritter and was for $195. The man who gave him the check told him it was filled out by his mother or his aunt. Subsequently, Payne identified appellant in a photographic lineup as the man who had given him the check.

Levi Muncy was working at a fireworks stand on July 2, 2000. On that day, appellant gave him a check purportedly signed by Mildred D. Ritter in the amount of $190 in exchange for fireworks. Appellant stated that Ritter was unable to come to the fireworks stand to buy the fireworks and asked if Muncy would accept the check. He stated he would. Subsequently, Muncy was shown a photographic lineup and identified appellant as the man who had given him the check.

Diane O'Dell was working at a fireworks stand on July 1, 2000. On that date she accepted a check in the amount of $265 in exchange for fireworks. The check was signed with the name Mildred D. Ritter. Subsequently, O'Dell viewed a photographic lineup and identified two pictures as resembling the man who had given her the check. She was not sure which man it was although she thought appellant's picture looked more like the man.

Kern County Sheriff's Deputy Stephen West was assigned to investigate possible forged checks in the name of Mildred D. Ritter. West prepared a photographic lineup that included a photograph of appellant. He presented this photographic lineup individually to Harl, Payne, and Muncy, who each identified appellant as the man who passed the check. He also presented the lineup to O'Dell who chose two photographs, but stated she thought appellant was the man in question.

Opal Costello, appellant's mother, testified that she purchased a truck from Thomas Greers in 2000. At the time of the purchase, she filled out a bill of sale noting the license plate number of the vehicle. In June or July of 2000, Costello loaned the truck to appellant.

West searched a truck in connection with this case. In the cab of the truck he found a photo of appellant, a Gottschalks credit card in the name of Mildred Ritter and a handwritten note addressed to "Dennis." The license plate of the truck matched the license number on the bill of sale prepared by Costello. The pickup truck was registered to Thomas Greers.

The prosecutor was permitted to introduce evidence establishing that appellant had previously passed a check on Ritter's account. Joseph Trainor testified that he was working at a fireworks stand for the Knights of Columbus Church on July 3, 2000. While working he accepted a check in the name of Mildred D. Ritter in exchange for fireworks. The man who passed the check stated that Ritter was his mother. Trainor stated that the man produced his driver's license when he presented his check and Trainor wrote the number on the check. In addition, Trainor wrote the license plate number of the man's truck on the check.

Subsequently, Trainor identified appellant in a photographic lineup as the man who passed the check. He described the man as white, in his 30's, five feet 10 inches tall and weighing 150 pounds.

Bakersfield Police Detective Steve Griffith investigated the check submitted to Trainor. He testified that he prepared a photographic lineup to present to Trainor and Trainor selected appellant's photo as the man who had passed the check. Griffith also noted that appellant's appearance had changed quite a bit from the time the photograph was taken to the time of trial.

**Defense**

Appellant testified in his own defense. Appellant met a man named Thomas Greers in March of 2000. Greers told appellant that he needed money to bail his girlfriend out of jail and to get his truck out of impoundment. Greers offered to give appellant and his mother $2,000 worth of tools if they would loan him the money. To insure the deal, Costello made out a bill of sale for Greer's truck. From that time until mid-August, Greers stayed with appellant off and on and worked with appellant cleaning Costello's rental houses. Appellant used the truck during the months of June and July 2000, as did Greers.

During appellant's association with Greers, Greers asked if appellant could cash a check for him because he did not have any identification. Appellant agreed to cash the check in the amount of $23 for him at Foodland Market. Appellant testified that Greers assured him the check was good and was from his aunt. On another occasion, shortly before the Fourth of July, Greers asked appellant if he wanted to go with him to buy fireworks. Appellant stated he did and the two made a purchase together at a fireworks stand. Greers stated the check used to purchase the fireworks was from his aunt, but the aunt could not purchase the fireworks herself because she was sick.

Sometime after these incidents, appellant was arrested for passing checks in the name of Mildred Ritter. He was arraigned later that day and told that if he pleaded guilty he would receive a misdemeanor conviction and 120 days in jail. Appellant accepted the offer because he did not want to have a felony conviction. In addition, appellant denied forging the checks, but stated that he had passed them.

Appellant denied passing any other checks on Ritter's account. In addition, he denied signing the name "David Costello" on the back of the Foodland check. He insisted he believed the checks he did pass for Greers were genuine.

Appellant described Greers as 33 years old, five feet 10 inches in height, 145 to 160 pounds, with blonde hair. Appellant stated that it was Greers who had passed the other checks in issue and Greers and his girlfriend left town after appellant was arrested. Appellant opined that Greers obtained the checks from one of the rental houses they worked on for Costello because Ritter's niece lived there. Appellant stated that Ritter's belongings were left in the garage of the house after she passed away and Greers was in charge of taking the items to the dump.

See pp. 2-6, Exhibit 3, Answer (footnotes omitted).

## DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

## II.  Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court

must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

    **A.  Ground One**

In his first ground for relief, Petitioner claims the underlying convictions are barred by the principles of double jeopardy.

    1. Factual Background

The Court hereby adopts the factual summary set forth in the 5th DCA's opinion:

> On August 29, 2000, the Kern County District Attorney's Office filed a complaint against appellant alleging one count of forgery. The complaint stated:
>
> " . . . On or about July 3, 2000, Kobby Michael Layne,[2] did willfully and unlawfully with the intent to defraud, falsely make, alter, forge or counterfeit checks in the name of Mildred Ritter, or did utter, publish, pass, or attempt to pass said checks as true or genuine knowing said checks to be counterfeit, in violation of Penal Code Section 470(d).
>
> As to Kobby Michael Layne, the above charge is filed as a misdemeanor pursuant to Penal Code Section 17(B)(4)."
>
> On the same day, appellant was arraigned on this charge, waived his right to counsel and to trial, and entered a plea of guilty. Appellant requested immediate sentencing, and was placed on three years' probation and ordered to serve 120 days in the county jail.
>
> On February 26, 2001, appellant was charged with the crimes at issue in the present case. For each of the forgery counts, the complaint specified a specific check number and specific amount.[3] The complaint further alleged that each of the checks were forged in the name of Mildred D. Ritter. Appellant initially pleaded not guilty to these charges, but subsequently moved to withdraw his plea to enter a plea of once in jeopardy and to dismiss the charges against him. After a hearing, the trial court denied the motion.

See pp. 6-7, Exhibit 3, Answer.

    2.  Review by the State Courts

This claim was first presented on direct appeal to the 5th DCA.  The 5th DCA denied the claim on April 16, 2003, in a reasoned opinion. See Exhibit 3, Answer.  The claim was then presented to the California Supreme Court in a petition for review; however, the petition was summarily denied on June 25, 2003. See Exhibit 4, Answer.  The California Supreme Court, by its "silent order"

---

[2] There is no dispute on appeal that Kobby Michael Layne is appellant's alias. During the arraignment of the misdemeanor charge, appellant answered to his true name of Dennis Allen Cannon.

[3] Count two alleged appellant forged check No. 1156 in the amount of $23.00 on or about July 13, 2000. Count three alleged appellant forged check No. 1147 in the amount of $265.00 on or about July 1, 2000. Count four alleged appellant forged check No. 1296 in the amount of $195.00 on or about July 1, 2000. Count five alleged appellant forged check No. 1153 in the amount of $190.00 on or about July 2, 2000.

denying review of the 5th DCA's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the 5th DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the 5th DCA stated:

> The double jeopardy clauses of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, and article I, section 15, of the California Constitution provide that no person shall be "twice put in jeopardy" for the same offense. These provisions protect a criminal defendant from both multiple punishments for the same offense as well as successive prosecutions for the same offense after acquittal or conviction. (*North Carolina v. Pearce* (1969) 395 U.S. 711, 717; *People v. Massie* (1998) 19 Cal.4th 550, 563.) A guilty plea is the equivalent to a conviction and bars a subsequent prosecution for the same offense. (*People v. Scott* (1997) 15 Cal.4th 1188, 1201.) Offenses are considered the "same offense" for the purpose of double jeopardy analysis if one offense contains all the elements of the other. (*United States v. Dixon* (1993) 509 U.S. 688, 696-697.) The burden is on the defendant to prove that the current conviction is barred double jeopardy. (*People v. Lazarevich* (2001) 95 Cal.App.4th 416, 421.)
>
> Appellant's claim is premised upon the notion that, when he pleaded guilty to the misdemeanor forgery charge, he had been convicted for the present offenses. However, at the hearing on the motion to dismiss the action, the prosecution introduced into evidence police reports supporting the misdemeanor charge. Extrinsic evidence is admissible to demonstrate the crime of which the defendant was previously convicted. (*People v. Braddock* (1953) 41 Cal.2d 794, 800.) These reports stated appellant had passed three checks in the name of Mildred Ritter: check No. 1150 in the amount of $200.00 dated July 3, 2000; check No. 1291 in the amount of $107.00 dated July 1, 2000; and check No. 1295 in the amount of $160.86 dated July 1, 2000. There was no dispute that these were the checks that supported the misdemeanor charge. As each of the checks was different from the checks that formed the basis of the current convictions, appellant has not demonstrated that he was prosecuted twice for the same offense. (See, e.g., *People v. Tenner* (1944) 67 Cal.App.2d 360, 364-365 [no double jeopardy bar where defendant subjected to two successive prosecutions for sex acts against same victim occurring on same night, as each incident was a separate crime]; *People v. Lachuck* (1935) 5 Cal.App.2d 729, 731 [previous acquittal for rape and incest did not bar subsequent prosecution for incest occurring two weeks later, as each act was separate and distinct from the other].) Thus, his double jeopardy claim fails.

See pp. 7-8, Exhibit 3, Answer.

3. Analysis of Claim

The state court's denial of Petitioner's claim is consistent with Supreme Court precedent, and the state court did not unreasonably apply Supreme Court precedent. As stated by the appellate court, the underlying convictions in this case stem from separate and distinct incidents from the prior convictions. The checks Petitioner passed with respect to his prior convictions are not the same checks for which Petitioner was prosecuted in this case. Thus, the state court rejection of this claim was not contrary to, or an unreasonable application of, clearly established Federal law. See 28 U.S.C. § 2254(d). The claim should be denied.

**B.  Ground Two**

Petitioner next argues the charged offenses in this case were too interrelated to his prior convictions to be charged separately and therefore violate Kellett v. Superior Court, 63 Cal.2d 822 (1966). Respondent correctly argues that this claim is not cognizable on federal habeas.

The basic scope of habeas corpus is prescribed by statute.  Subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution."  28 U.S.C. § 2254(a) states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*.

(emphasis added).  See also, Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court.  The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . ." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

The instant claim does not present a cognizable federal claim. The claim centers on a violation of state law, and generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court rulings on questions of state law).

Moreover, as previously discussed, Petitioner's claim that the multiple prosecutions violated double jeopardy principles is without merit. Petitioner's claim that the multiple prosecutions violated due process is also without merit, because his due process claim is nothing more than his double jeopardy claim in different clothing. See Sattazahn v. Pennsylvania, 537 U.S. 101, 116 (2003) (declining to hold that the Due Process Clause provides greater double jeopardy protection than the Double Jeopardy Clause). Therefore, this claim should be rejected.

**C. Ground Three**

Petitioner next claims the trial court committed prejudicial error by allowing the prosecution to present the jury with evidence of Petitioner's prior forgery conviction without allowing Petitioner to inform the jury he only pleaded guilty to the misdemeanor to avoid the risk that he would be prosecuted for a felony, convicted, and sentenced to life imprisonment under the Three Strikes law.

1. Clearly Established Supreme Court Precedent

Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle, 502 U.S. 62 (1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985). Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 502 U.S. 62; Pulley v. Harris, 465 U.S. 37, 41 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991). Only if there are no permissible inferences that the jury may draw from the evidence can its admission rise to the level of a due process violation. Id. at 920. Intent is a permissible inference that the jury may draw from the evidence of prior bad acts. See Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir. 1999).

2. Review by the State Courts

This claim was first presented on direct appeal to the 5th DCA. The 5th DCA denied the claim on April 16, 2003, in a reasoned opinion. See Exhibit 3, Answer. The claim was then presented to the California Supreme Court in a petition for review, which was then summarily denied on June 25, 2003. See Exhibit 4, Answer.

In rejecting Petitioner's claim, the 5th DCA stated:

> . . . [Appellant] claims that he was prejudiced because the jury was more likely to believe his claim that he only pleaded guilty to the prior misdemeanor forgery charge because he wanted to avoid a felony conviction if they knew that this was a three strikes case. Essentially, appellant argues that the jury would be more likely to believe him if it knew that he was a seven-time felon. We disagree. Appellant was permitted to testify that he pleaded

> guilty to the misdemeanor charge because he did not want to have a felony conviction on his record, and appellant further informed the jury that when he was arraigned on the misdemeanor complaint the probation officer told him he could not [sic] "afford no felonies." Thus, the jury was adequately informed as to the circumstances surrounding his guilty plea.
>
> Appellant's reliance on *Crane v. Kentucky* (1986) 476 U.S. 683 and *People v. Basuta* (2001) 94 Cal.App.4th 370 is misplaced. In each of those cases the trial court prevented the defendant from presenting evidence tending to indicate that the defendant was not guilty of the crime accused. In *Crane*, the trial court prohibited the accused from establishing the circumstances surrounding his confession to demonstrate that the confession itself was unreliable. (*Crane, supra*, at p. 684.) In *Basuta*, the trial court would not allow the defendant to produce evidence tending to establish that another person had committed the crime at issue. (*Basuta, supra*, at p. 386.) Appellant was not prevented from presenting such evidence in this case. The trial court allowed appellant to testify, consistent with his defense, that he did not commit the crimes at issue and that he did not commit the previous misdemeanor forgery to which he had pleaded guilty. Appellant was permitted to inform the jury that he had pleaded guilty to the misdemeanor forgery, not because he had forged the checks, but because he had passed them. In addition, he testified that at the arraignment the probation officer told him that if he pleaded guilty to the one count he would avoid a felony conviction which he "did not want to have." Thus, the jury was informed regarding the circumstances of his plea and could evaluate appellant's explanation.

See pp. 15-16, Exhibit 3, Answer.

3.  Analysis of Claim

Respondent correctly argues that this ground fails to present a cognizable federal claim. As noted above, the admissibility of evidence is a matter of state law and is not reviewable in a federal habeas corpus proceeding. Estelle, 502 U.S. 62. Furthermore, the evidence of Petitioner's prior was admissible to show intent. The appellate court properly rejected Petitioner's contention that intent was not shown from his prior bad act:

> Appellant contends that his prior conviction for forgery had no tendency to prove that he had the intent to defraud in the present case because there "was nothing about the way in which appellant passed the check to Trainor which showed he did so with the intent to defraud." Appellant is mistaken. Appellant pleaded guilty to one count of misdemeanor forgery. By pleading guilty he admitted every element of the charged offense. Among other elements, the crime of forgery requires a person to alter, forger, publish, or utter a check with the intent to defraud. Consequently, appellant necessarily admitted through his guilty plea that he passed the forged check to Trainor with the intent to defraud him. That appellant had previously passed a check with the intent to defraud was probative of whether he harbored the intent to defraud the victims in this case.
>
> Here, appellant admitted that he had cashed the Foodland check and passed the check at the fireworks stand, but claimed that he believed Greers had the right to pass them. Thus he contended that he did not harbor the intent to defraud the victims by passing the checks. Appellant's guilty plea of passing the forged check to Trainor, which was written on the same account as the checks at issue in this case, was highly probative of appellant's intent in passing the checks at issue. Thus, appellant's guilty plea was admissible to prove appellant's intent in passing the checks at issue in the present case.

1   See pp. 12-13, Exhibit 3, Answer (citations and footnotes omitted).

2       Petitioner also argues his due process rights were violated because he was assured when he
3   pleaded guilty to the misdemeanor forgery charges that all other forgery counts would be dropped.
4   The appellate court pointed out that there was no evidence of such a deal; on the contrary, the court
5   pointed out that "the minute order from the plea proceeding stated that his conviction could be used
6   against him as a prior offense." See p. 14, Exhibit 3, Answer.

7       Accordingly, the rejection of this claim by the state courts was neither contrary to or an
8   unreasonable application of clearly established Federal law, nor an unreasonable determination of the
9   facts in light of the evidence presented, and so it should be denied. See 28 U.S.C. § 2254(d).

10  **D.  Ground Four**

11      In his last ground for relief, Petitioner claims the State breached a plea agreement wherein the
12  State allegedly agreed not to prosecute Petitioner on other forgery charges or use the conviction as
13  evidence against him if Petitioner pleaded guilty to misdemeanor forgery.

14      As noted above, other than Petitioner's own testimony, there is no record of such a plea
15  agreement in the state records. See p. 14, Exhibit 3, Answer. The trial court found no evidence of
16  such a deal, and the appellate court upheld the trial court's findings. The state court's factual findings
17  are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has presented no evidence showing the
18  existence of such a plea agreement. Accordingly, the claim should be rejected.

19                               **RECOMMENDATION**

20      Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas
21  corpus be DENIED and the Clerk of Court be DIRECTED to enter judgment.

22      These Findings and Recommendations are submitted to the Honorable Anthony W. Ishii,
23  United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and
24  Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of
25  California.

26      Within ten (10) court days (plus three days if served by mail) after being served with a copy,
27  any party may file written objections with the court and serve a copy on all parties.  Such a document
28  should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to

the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 15, 2006**            /s/ Sandra M. Snyder
icido3                                                          UNITED STATES MAGISTRATE JUDGE